State of North Carolina

Guilford County

In the General Court of Justice
Superior Court Division
25CV_____
25CV008959-400

---

JOSEPH ANTHONY ESPINOZA, *on behalf of himself and all others similarly situated,*

    *Plaintiff,*

v.

UNITED PARCEL SERVICE, INC.,

    *Defendant.*

---

CLASS ACTION COMPLAINT

JURY TRIAL DEMAND

## PRELIMINARY STATEMENT

Plaintiff Joseph Anthony Espinoza on behalf of himself and all others similarly situated, files this Class Action Complaint against United Parcel Service, Inc. ("UPS" or "Defendant"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.     This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), brought on behalf of applicants for employment with UPS, a package delivery and supply chain management company. Plaintiff contends that UPS systematically violates § 1681b(b)(3) of the FCRA by using consumer reports to take adverse employment action without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, leaving the person who is the subject of the report without any meaningful opportunity to correct any errors on the report.

2. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as UPS. This action involves UPS's systematic violations of several of those important rules.

3. Plaintiff was denied employment as a package handler for UPS based upon a standardized background screen conducted by First Advantage Background Services Corp. ("First Advantage") pursuant to an agreement between First Advantage and UPS whereby First Advantage performs a standardized background screen on UPS's candidates for hire, where First Advantage applies criteria provided in advance by UPS to determine whether candidates are eligible for employment. First Advantage adjudicated Plaintiff as "ineligible" for hire based upon the purported existence of a criminal history. This criminal history, however, was inaccurate as it did not belong or relate to Plaintiff.

4. In violation of the FCRA, UPS willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from First Advantage, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, individuals who have applied to UPS for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

5. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and classes of similarly situated employment applicants for whom UPS failed to comply with FCRA § 1681b(b)(3)'s pre-adverse action notification requirements.

Case 1:25-cv-00429-WO-LPA    Document 3    Filed 05/28/25    Page 2 of 15

## JURISDICTION & VENUE

6. Jurisdiction of this Court arises under North Carolina General Statutes Section 1-75 et seq. as the acts occurred within the state of North Carolina, Defendant did business in North Carolina, and Plaintiff is a consumer within the state of North Carolina.

7. Venue lies in this county pursuant to North Carolina General Statutes Section 1-82, as Plaintiff resides in Guilford County.

## PARTIES

8. Plaintiff Joseph Anthony Espinoza is an adult individual residing in Whitsett, North Carolina.

9. Defendant UPS regularly conducts business in the State of North Carolina, is authorized to do business in North Carolina, and has a principal place of business at 55 Glenlake Parkway NE, Atlanta, Georgia.

## FACTUAL ALLEGATIONS

**UPS's Use of First Advantage's Screening Services**

10. First Advantage Background Services Corp. ("First Advantage") is a consumer reporting agency which provides "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B, background and employment screening services, and decision-making intelligence to prospective employers.

11. First Advantage investigates and reviews public records and private databases and assembles and/or maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

12. From its files, First Advantage sells consumer reports to potential employers (such as Tapestry) wishing to review the criminal record history, or lack thereof, of various job applicants or employees.

13. In addition to providing background reports, First Advantage offers to its employment screening customers an enhanced service where, in addition to creating a background report about an applicant or employee, First Advantage will also review the report to determine whether it meets the employer's hiring criteria. Under this service, the employer develops a "matrix" together with First Advantage which establishes the records that will disqualify the applicant or employee and lead to an adverse action if they appear on a background report. First Advantage then applies these standards as part of the creation of the report, delivering a "score" on the face of the report.

14. The only available score options are "Pass" or "Decisional." "Decisional" is a euphemism for "Failed."

15. UPS uses and/or continues to use First Advantage's screening services, including the "scoring" of reports as discussed above, to conduct background checks on applicants for employment and employees. Pursuant to those services, UPS has identified its hiring criteria to permit First Advantage to place a "score" on the face of background reports indicating whether the applicant or employee is eligible (a "Pass" score) or ineligible (a "Decisional" score) for employment with UPS.

16. Pursuant to its standard practices, UPS obtains background checks on applicants who have been conditionally offered employment or promotion.

17. Under the FCRA, any "person" using a consumer report, such as UPS, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained

4

from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action. 15 U.S.C. § 1681b(b)(3)(A); *see also Goode v. LexisNexis Risk & Info. Analytics* 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) ("Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b).").

18. There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete." *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

19. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

20. Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting the Telephone Consumer Protection Act).

21. Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, 2006 WL 7067107, at *5 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 WL 149032, at *3 (E.D. Va. Jan. 11, 2008) (quoting *Williams*). In *Reardon v. Closetmaid Corp.*, 2011 WL 1628041 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

22. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

23. UPS procedures for obtaining background reports, making employment eligibility decisions based upon such reports and notifying consumer job applicants about the results of those decisions are standardized and do not vary from consumer to consumer.

24. Pursuant to these standardized procedures, UPS feigns compliance with 15 U.S.C. § 1681b(b)(3) by sending consumers a notice purporting to be a pre-adverse action notice, and instructing consumers to contact First Advantage within five business days of the date of the notice.

25. This notice is illusory. By the time the notice is sent, UPS has already made a final decision not to hire, regardless of any dispute submitted by the consumer regarding the report, or any explanation the consumer might be able to give to UPS regarding the report's contents.

26. In addition to failing to comply with the FCRA's pre-adverse action notice requirement, UPS's practices mislead consumers into believing they will have a full opportunity to retain the job they have been conditionally offered, when in reality an adverse decision has already been made.

27. The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendant failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A).

**The Experience of Plaintiff Joseph Espinoza**

28. In or around September 2024, Plaintiff applied for employment with UPS.

29. Mr. Espinoza was qualified for the position.

30. As part of his job application, Plaintiff signed a document authorizing UPS to obtain a consumer report for employment purposes.

31. UPS provided Plaintiff with a conditional offer of employment contingent on him passing a background check.

32. In connection with Mr. Espinoza's application, UPS purchased a background screening report from First Advantage for the purpose of evaluating his eligibility for employment.

33. On or about September 27, 2024, using its usual practices and procedures, First Advantage compiled and furnished a consumer report to Defendant UPS regarding Mr. Espinoza.

34. First Advantage has been reporting, and did here report, derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's criminal history and record to third parties ("inaccurate information").

35. The inaccurate information includes, but is not limited to, two (2) criminal offense records that actually belong to a different individual. These records appear on the consumer report First Advantage sold about Plaintiff to UPS as follows: "ASSAULT WITH DEADLY WEAPON" and "CONVICTED FELON ADDICTED TO NARCOTICS OWN OR POSSESSES FIREARM."

36. The inaccurate information grossly disparages the Plaintiff and portrays him as a convicted criminal. There is perhaps no greater error that a consumer reporting agency can make.

37. The derogatory inaccuracies appear to be caused by a misreading of public records.

38. Pursuant to the business relationship in place between UPS and First Advantage, First Advantage gave the criminal record element of the September 29, 2024 report concerning Plaintiff a score of "Decisional," meaning ineligible. The report furthermore stated "BASED ON YOUR CRITERIA, THE OVERALL CASE SCORE IS INELIGIBLE."

39. Based upon the September 29, 2024 report, UPS immediately removed Plaintiff from hiring consideration.

40. On or about September 30, 2024, and although Plaintiff had already disputed the inaccurate report, Defendant UPS emailed Plaintiff a purported pre-adverse action notice and copy of the First Advantage report. The notice directed Plaintiff to contact First Advantage "within five (5) business days from the date of this letter." It went on to state that if no dispute was submitted, "UPS may take adverse action on the basis of the consumer report."

41. On September 30, 2024, Plaintiff disputed the report with First Advantage over the phone. Plaintiff was given a dispute number, and was asked to email a copy of his photo ID. Plaintiff complied by emailing a copy of his photo ID to First Advantage the same day.

42. On the very next day, October 1, 2024, and despite Plaintiff's dispute, UPS emailed Plaintiff stating that "we have decided not to move forward with your application."

43. Any "pre-adverse" action notice provided by or on behalf of UPS was entirely illusory because UPS had already made a final decision not to hire him by September 29, 2024.

44. UPS's actions taken with respect to Plaintiff were consistent with its standardized practices for obtains consumer reports, using them to make adverse employment decisions, and informing consumers about the results of those decisions.

45. Following its investigation into Plaintiff's dispute, First Advantage removed the inaccurate criminal records from its report

46. Upon information and belief, First Advantage notified UPS of the results of the dispute.

47. By that point, it was too late, and the UPS job opportunity was gone.

48. As a result of Defendant's conduct, Plaintiff has suffered harms in the form of denial of statutorily mandated information essential to vindicating his rights and preserving the job opportunity, wasted time in submitting a futile dispute, lost employment opportunities, harm to reputation, and emotional distress, including humiliation and embarrassment.

49. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

50. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## CLASS ALLEGATIONS

51. Plaintiff brings this action pursuant to the General Statutes Rule 23 on behalf of the following Classes:

    a. All employees of Defendant UPS or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights before it took such adverse action.

    b. All employees of Defendant UPS or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) to whom Defendant sent or caused to be sent (1) a communication substantially in the form of its September 30, 2024 letter to Plaintiff, and (2) a communication substantially in the form of its October 1, 2024 email to Plaintiff, which was dated less than five (5) business days after the letter.

52. Plaintiff reserves the right to amend the above definitions of the Classes based upon developments in discovery or as otherwise appropriate and permitted.

53. **Numerosity under Rule 23(a).** The Class members are so numerous that joinder of all is impractical. Upon information and belief Defendant UPS procures and uses hundreds if not thousands of consumer reports for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendant UPS.

54. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

    a) Whether Defendant failed to provide each employee or applicant for employment a copy of their consumer report *before* they took adverse action based upon the consumer report;

    b) Whether Defendant failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights *before* they took adverse action based upon the consumer report;

    c) Whether Defendant acted willfully or negligently in disregard of the rights of employees and applicants in their failure to permit its employees and automated systems to send consumers (employees and applicants) their full consumer report and a written statement of their FCRA rights before taking adverse action based on the consumer report.

55. **Typicality.** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for Class members, arising out of Defendant UPS's common course of conduct.

56. **Adequacy Pursuant to Rule 23(a).** Plaintiff is an adequate representative of the Classes. His interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

57.     **Predominance and Superiority..** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant UPS's conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT ONE

**Failure to Provide Pre-Adverse Action Notice Requirements
Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
(On behalf of Plaintiff and Class)**

58.     Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

59.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

60.     The First Advantage report UPS obtained is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d).

61.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must

provide the consumer with a copy of the report and a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking any such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

62. For purposes of this requirement, an "adverse action" includes "any ... decision ... that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

63. Defendant UPS is a "person" and regularly uses background reports for employment purposes. 15 U.S.C. § 1681a(b).

64. The FCRA requires UPS, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. §§ 1681b(b)(3)(A)(i) and (ii).

65. Defendant UPS willfully and negligently violated § 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Classes the following before using such reports: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendant took adverse action on their employment applications, promotion applications or employment.

## COUNT II

### N.C. Gen. Stat § 75-1.1
### (On behalf of Plaintiff individually)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

67. Defendant engaged in an unfair and deceptive act by representing to Plaintiff that he would have five business days after the September 30, 2024 letter to make a dispute of the

contents of a background check before UPS would take action based on the background check, but nonetheless taking adverse action one day later, although Plaintiff had already disputed.

68. Defendant's actions were part of its standardized business activities and thus in or affecting commerce.

69. Defendant's action proximately harmed Plaintiff as alleged above, including but not limited to causing a temporary loss of employment.

## JURY TRIAL DEMAND

70. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant him and members of the Class the following relief:

A. An Order certifying the proposed Class and Subclass under Rule 23 and appointing Plaintiff and his counsel to represent them;

B. Actual damages;

C. Statutory damages;

D. Punitive damages;

E. Costs and reasonable attorney's fees;

F. An award of pre-judgment and post-judgment interest as provided by law; and

G. Such other and further relief as may be necessary, just, and proper.

Dated: April 25, 2025

Respectfully submitted,

JOSEPH ANTHONY ESPINOZA, *individually, and on behalf of all others similarly situated,*

By: Michael A. Tomkins (NC Bar #63015)

Leeds Brown Law, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
T: (516) 873-9550
mtompkins@leedsbrownlaw.com

James A. Francis (*pro hac vice* forthcoming)
John Soumilas (*pro hac vice* forthcoming)
Lauren KW Brennan (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*